IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MICHAEL RYAN                                                                                       PLAINTIFF

       v.                              Civil No. 13-2197

CAROLYN W. COLVIN[1], Acting Commissioner of
Social Security Administration                                                          DEFENDANT

### MEMORANDUM OPINION

      Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

      The plaintiff filed his application for DIB and SSI on June 14, 2010 alleging an onset date of October 21, 2009, due to plaintiff's lumbar back pain and depression. (T. 204). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on August 30, 2011. Plaintiff was present and represented by counsel.

      At the time of the administrative hearing, plaintiff was 52 years of age, possessed a high school education, and was able to communicate in English. (T. 22). The plaintiff has past relevant work ("PRW") experience as a warehouse worker, mold cleaner, and production assembler. (T. 68).

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On January 27, 2012, the Administrative Law Judge ("ALJ") concluded that the plaintiff had the following severe impairments if he stopped the substance use: degenerative disc disease of the lumbar spine, status-post surgery; a left clavicle fracture; hypertension; a major depressive disorder; and a personality disorder. (T. 18). The ALJ concluded that if he stopped the substance abuse, although severe, the plaintiff's impairments did not meet or equal any Appendix 1 listing. (T. 18). The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform unskilled, light work. (T. 19). With the assistance of a vocational expert, the ALJ determined plaintiff could perform other work as an assembler, machine tender, and inspector. (T. 23).

## II. Applicable Law:

The court's role is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough so that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and

relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

**A. Drug and Alcohol Abuse**

In the case of alcoholism and drug addiction, an ALJ must first determine if a claimant's symptoms, regardless of cause, constitute disability. *See Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir.2003) (citing 20 C.F.R. §§ 404.1535, 416.935). If the ALJ finds a disability and evidence of substance abuse, the next step is to determine whether those disabilities would exist in the absence of the substance abuse. *Id.* at 694-95. When a claimant is actively abusing alcohol or drugs, this inquiry is necessarily hypothetical, and thus more difficult than if the claimant had stopped. *Id.*

Since certain 1996 amendments to the Social Security Act, if alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied. *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R § 404.153. The key factor in determining if drug addiction or alcoholism is material is if the individual would not be found disabled if alcohol or drug use were to cease. This depends on what mental or physical limitations would remain if the claimant stopped using drugs or alcohol and whether the remaining limitations would be disabling. *See* 20 C.F.R. § 404.1535; *Jackson v. Apfel,* 162 F.3d 533, 537 (8th Cir. 1998); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000). The plaintiff has the initial burden of showing that alcoholism or drug addiction is not material to the finding of disability. *See Brown v. Apfel*, 192 F.3d 492, 497-98 (5th Cir.1999); *Pettit*, 218 F.3d at 903 (claimant has initial burden of showing that alcoholism or drug use is not material to finding of disability; key factor is whether claimant would still be found disabled if she stopped using drugs and alcohol).

In the present case, the ALJ found that the plaintiff's alcohol consumption was a contributing

factor material to the determination of disability because he would not be disabled if he stopped the substance use. (T. 23). In making this determination, the ALJ relied on evidence including clinic notes, hospital records, and mental health evaluations and progress reports, documents that the plaintiff has a longstanding history of alcoholism. (T. 18, 299-1387). When not considering the plaintiff's alcohol dependence or abuse and given the objective medical evidence of record, the ALJ found that the plaintiff's residual functional capacity is reasonable, and he is not disabled. (T. 22-23, 299-1387). The court concurs with the Government's articulation of the primary issue presented upon appeal, "whether substantial evidence supports the ALJ's decision that [alcohol addiction] is a contributing factor material to the determination of disability." *See* Government's Brief (Govt.'s Br.) at 2, Plaintiff's Brief (Pl.'s Br.) at 9-16.

**B. Distinguish Mental Impairments and DAA**

The plaintiff alleges that substantial evidence supports that it is not possible to separate the mental restrictions and limitations imposed by drug and alcohol abuse ("DAA") and the various other mental disorders shown by the evidence, and therefore, a finding of "not material" would be appropriate. *See* Pl.'s Br. at 10. The ALJ found, however, that his depression symptoms and personality disorder were adequately managed with medication when he abstained from the use of alcohol. (T. 21). The court determines that the medical evidence supports the ALJ's finding.

For instance, shortly after the alleged onset date on October 29, 2009, the plaintiff's depression was found to be stable, and at the time he was prescribed Effexor and Doxepin. (T. 795). On May 6, 2010, the plaintiff reported that he had not consumed alcohol in 20 days, and he continued to go to Alcoholics Anonymous ("AA") meetings. (T. 792). During the visit, the physician did not make note of any problems with his mental impairments, and his orientation,

mood, affect, and memory were found to be normal. (T. 792). During the Mental Consultative Examination on September 22, 2010, Dr. Walz did not report that the plaintiff arrived intoxicated. (T. 819-825). Dr. Walz diagnosed him with major depression that was recurrent and moderate without psychosis, a history of polysubstance dependence with current alcohol abuse, and personality disorder with avoidant and schizoid traits. (T. 824). Making her assessment while the plaintiff was sober, Dr. Walz noted that he was able to shop independently, attend AA meetings, go to the library, and watch television. (T. 824). Dr. Walz assessed that his speech was clear and intelligible, intellectual functioning was thought to be in the average range, attention and concentration were adequate, persisted well, and speed of information processing was average. (T. 824). The plaintiff also alleges that Dr. Walz's assessment concludes that his functioning was at a level consistent with the inability to keep a job. *See* Pl.'s Br. at 16. The court disagrees with this allegation because Dr. Walz's findings are not inconsistent with an individual that could perform unskilled work. 20 C.F.R. §§ 404.1568(a), 416.968(a).

More recently on August 29, 2011, the plaintiff reported not drinking for three weeks. (T. 1029). Again, the physician did not make note of any problems with his mental impairments and his psychiatric examination was normal. (T. 1029). Although the ALJ cites to some medical records that occurred before the alleged onset date for support, the court finds that there is sufficient evidence after the alleged onset date to support the ALJ's conclusion.

## C. Psychiatric Review Technique

The plaintiff also alleges that he had repeated episodes of decompensation based on the evidence. *See* Pl.'s Br. at 12. The ALJ found in his decision that he had experienced no episodes of decompensation. (T. 17-18). Psychiatric review technique ("PRT") analysis is required to be

conducted and documented at each level of the review process, including the ALJ level. 20 C.F.R. § 416.920a(a)-(e). The technique involves determination of whether there is a mental impairment followed by a rating of the degree of functional limitation resulting from the mental impairment. The technique must be conducted at all levels of the application process, beginning with the initial and reconsideration levels. *Nicola v. Astrue,* 480 F.3d 885, 887 (8th Cir. 2007). The PRT must be documented in the ALJ's written decision, including the findings and conclusions based on the PRT. 20 C.F.R. §§ 404.1520a(e)(4); 416.920a(e)(4).

The plaintiff alleges that the ALJ suggested in the decision that he had repeated episodes of decompensation despite his finding in the PRT analysis. *See* Pl.'s Br. at 12. The term repeated episodes of decompensation is defined in listing 12.00 as each of extended duration in these listings

> means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.§§ 404.1520(d); 416.920(d)). After a review of the medical records for the relevant time period, the court supports the ALJ's finding. The plaintiff was admitted to Levi Hospital for five days, The Bridgeway for five days, and there was some mention that he was transferred to Compass and Rivendale, but no evidence was admitted into the record from those facilities. (T. 1017-1020, 1117, 1230, 1256-1257). Based on the submitted evidence, he did not meet the definition of repeated episodes of decompensation as the plaintiff alleges, and the ALJ did not make a determination of equivalence in the decision.

**D. Not Disabled Without DAA**

    **1. Global Assessment of Functioning**

The plaintiff alleges that there is some evidence to show that the plaintiff would still be disabled when alcoholism is removed from the equation. *See* Pl.'s Br. at 11. The plaintiff cites to his low Global Assessment of Functioning ("GAF") scores while sober for support. *See* Pl.'s Br. at 11. The ALJ, however, found that his low GAF scores were consistent with his alcoholism and, he detailed hospitalizations for alcohol abuse with corresponding low GAF scores. (T. 18). A particular GAF score does not warrant a finding of disability because it only applies to the date in the medical report in which it is noted. Comments to new rules revising criteria for evaluating mental disorders effective September 20, 2000, state that GAF scores do not have a direct correlation to the severity requirements in the mental disorders listings. 65 Fed. Reg. 50746, 60764-65 (August 21, 2000). Instead, disability determinations should be made on a case by case basis, considering all the evidence, not just a GAF result. *Lozada v. Barnhart*, 331 F.Sup. 2d 325, (E.D. Penn. 2004); *Purvis v. Commissioner*, 57 F.Supp.2d 1088, 1093 (D. Oregon 1999). As this court has explained, "[w]hile the GAF system provides insight into a claimant's overall level of functioning, it is by no means dispositive on the issue of disability and must be considered in conjunction with other medical evidence." *Stewart ex rel. J.L.M. v. Astrue*, 2:11-CV-02203-JRM, 2013 WL 252749 (W.D. Ark. Jan. 23, 2013). The court agrees that GAF scores are not dispositive, and there is sufficient medical evidence showing his improvement despite the low scores.

For example, when the plaintiff was admitted to Levi Hospital on May 27, 2011 his GAF score was 15. (T. 1018). When he was discharged five days later, his GAF score was determined to be serious at 46. (T. 1020). However, Dr. Downes reported that he went through an uneventful detoxification, and he was safe for discharge with suicidal ideation resolved. (T. 1019-1020). This evidence clearly shows the plaintiff improved with treatment. On July 5, 2011, the plaintiff was

admitted to St. Edwards Mercy Hospital because he presented with suicidal ideation with the onset precipitated by alcohol abuse. (T. 1186). After a consultation with Western Arkansas Counseling and Guidance Center ("WAGC"), he was recommend for inpatient substance abuse, but was not found to be in need of inpatient psychiatric treatment. (T. 1192). The preceding example reveals that his primary problem was alcohol abuse, and his mental impairments were not disabling as the plaintiff alleges.

### 2. Residual Functional Capacity

The ALJ determined that the plaintiff had the RFC to perform light work[2] [and] from a

> mental standpoint, he would be able to perform work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and use of little judgment, and the supervision required is simple, direct, and concrete.

(T. 19). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 CFR § 404.1567(b) and 416.967(b).

United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing *Lauer*, 245 F.3d at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Cox,* 495 F.3d at 620, 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ). As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). The court should, " defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue* 687 F.3d 1086, 1091 (8th Cir. 2012). "The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and

considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004); *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984).

The court finds that the ALJ's RFC determination is supported by the evidence other than the medical records. For instance, the plaintiff states in his Function Report that he watches television, reads, does not need special reminders, and can prepare simple meals. (T. 224, 226, 228). He goes outside daily, walks, rides his bicycle, and goes shopping. (T. 227). He also reported no problems with family, friends, and neighbors. (T. 229). He even testified that he attempted to work a couple of times since 2009. (T. 41). The claimant's sister, Linda Ryan, submitted a Third Party Function Report noting that he has no problems with personal care, no need for special reminders, he does light housekeeping for two hours a day, and does laundry weekly. (T. 234-236). Ms. Ryan reported that the plaintiff can pay bills, count change, handle savings account, and use a checkbook or money orders (T. 237). She also wrote that the plaintiff visits family and friends daily, and he goes to church and the community center weekly. (T. 238). Thus, the evidence reveals that the plaintiff is capable of performing various activities of daily living despite his severe impairments.

### 3. Physical Impairments

In regards to the plaintiff's physical impairments, the ALJ determined that his hypertension; degenerative disc disease of the lumbar spine, status-post surgery; and a left clavicle fracture were severe. (T. 17). Based on the medical evidence, the court agrees with the ALJ's finding that the plaintiff is not disabled even with these severe impairments. (T. 23).

Over the years, the plaintiff was consistently diagnosed with controlled hypertension that was conservatively managed with medication on a consistent basis. (T. 792, 851, 1029). On October 19, 2011, Dr. Honghiran conducted an Orthopedic Consultative Examination. Upon

physical examination, the plaintiff was able to walk normally, with no limp, and he could walk on his tiptoes and heels. (T. 1277). Dr. Honghiran noted that an examination of lumbar spine showed good range of motion with 60 degrees of flexion and 25 degrees of side bending, no pain or muscle spasms, normal reflex and sensation, and the straight-leg raising exam was negative in both legs. (T. 1278). An X-ray of lumbar spine showed evidence of narrowing of the disc space at L5-S1 and L4-5 from previous operation, but otherwise spine in good alignment. (T. 1278). Dr. Honghiran diagnosed him with history of back surgery in 1992 with still some residual back pain. (T. 1278). Nevertheless, Dr. Honghiran found that his prognosis was good with his main problem being alcoholism. (T. 1278).

The records reveal that the plaintiff was in an altercation with the police that resulted in a fracture of left clavicle. (T. 875). The physician initially recommended wearing a sling and taking Ibuprofen. (T. 875). On March 23, 2011, there was discussion of him being referred to an orthopedic specialist. (T. 874). An X-ray showed a comminuted fracture of the medial diaphysis of the left clavicle with marked further distraction of the fracture line. (T. 889). The plaintiff did not see an orthopedic specialist until the Orthopedic Consultative Examination on October 19, 2011. Dr. Honghiran noted that examination of the left shoulder showed a full range of motion, but there was deformity of left clavicle from previous fractures and he was still somewhat tender. (T. 1278). An X-ray of left shoulder revealed evidence of fracture of left clavicle gone into a nonunion which was why he is still somewhat tender. (T. 1278). The plaintiff was diagnosed with a fracture of left clavicle now gone through a nonunion, but Dr. Honghiran noted that it does not seem to bother him that much. (T. 1278). Dr. Honghiran wrote that his prognosis was good, with alcoholism being the barrier to employment and not his physical impairments. (T. 1278). To the extent that the plaintiff

contends he is disabled with DAA removed from the equation, the court finds the contention to be without merit.

**E.  Medical Evidence**

The plaintiff alleges that the Good Samaritan Clinic's ("GSC") records were bare-bones notes, and much more detailed hospital records from the same time period show a truer picture of his actual functioning.  *See* Pl.'s Br. at 14.  After a review of the medical records, the court agrees with the Government's contention that the hospital records show that when he returned to abusing alcohol, his condition deteriorated.  *See* Govt.'s Br. at 9.  The GSC's records show that on October 29, 2009 his depression was stable, on May 6, 2010 he had not consumed alcohol in 20 days, and on July 7, 2010 he was taking Campral to reduce his alcohol cravings.  (T. 792, 795, 852).  During each of the plaintiff's hospitalizations he was abusing alcohol, and this is evidence of how quickly his condition deteriorated with DAA.  (T. 901, 1017, 1041, 1070, 1110, 1161, 1190, 1221, 1257).  Based on the ALJ's synopsis of the plaintiff's medical records, the court concludes that the ALJ properly considered all of the evidence when making his finding that the plaintiff was not disabled if he stopped the substance abuse.  (T. 20-22).  The court also finds that substantial evidence supports the ALJ's decision that alcohol abuse is a contributing factor material to the determination of disability.  For the reasons stated above, an award of benefits is unwarranted**.**

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this 27th Day of June 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE